*684 OPINION OF THE COURT
John P. Lane, J.
.Richard Rogers contends that he was unjustly convicted and imprisoned. The trial of his claim was bifurcated and this decision is limited to liability issues.
On June 21, 1990 claimant was indicted by the Grand Jury of Cattaraugus County on two counts of grand larceny in the fourth degree. The indictment was tried on the theory that in June and July 1989 claimant obtained contract deposits in excess of $1,000 each from Robert Horton and Hobert Mason for whom he falsely promised to build pole barns. Following a trial in Cattaraugus County Court he was convicted as charged and sentenced to an indeterminate term of imprisonment. On appeal, the Appellate Division concluded the evidence failed to establish to a moral certainty that claimant’s failure to perform his contracts was the result of a fraudulent scheme rather than a lack of ability to manage his business, and reversed the judgment and dismissed the indictment. (People v Rogers, 192 AD2d 1092.1[1]
A cause of action for unjust conviction and imprisonment must be proved by clear and convincing evidence. (Court of Claims Act § 8-b [5] .) Claimant has satisfactorily established that he was convicted of two felonies, sentenced to a term of imprisonment and served a part of that term. That his conviction was reversed and the accusatory instrument was dismissed on a qualifying ground (see, CPL 470.20 [2]) is clear. However, it does not follow that the failure of the People to meet the standard of proof required in the criminal action supports a finding in claimant’s favor here. (See, Reed v State of New York, 78 NY2d 1.) What must be determined is whether he has proved that: (a) he did not obtain the deposits from Horton and Mason through the use of false promises and (b) he did not by his own conduct cause or bring about his conviction.
The evidence establishes that claimant, an experienced contractor, was an unsuccessful businessman. His attempts to develop business were limited to placing ads in small newspapers in southern New York and northern Pennsylvania. Al *685 though he had customers for a few pole buildings, he was unable to accumulate sufficient contracts to obtain bulk discounts on materials. He lacked a line of credit with his suppliers and the deposits he had taken were not sufficient to finance the full cost of the materials and labor needed to perform the contracts. Moreover, he was beset by problems with his employees. While financial loss to one or more of his customers may have been inevitable, it is clear claimant intended to perform the Horton and Mason contracts when he made them and received the deposits; and that he was not engaged in a scheme to defraud. (Compare, People v Norman, 85 NY2d 609; People v Churchill, 47 NY2d 151.) What remains to be determined is whether claimant has proven by clear and convincing evidence that his own conduct did not cause or bring about his conviction.
Just what constitutes conduct causing or bringing about a conviction is not obvious. One court has pointed to the examples of conduct given by the Law Revision Commission (see, Mem of Law Revision Commn, 1984 McKinney’s Session Laws of NY, at 2932)[2] in ruling that the Legislature did not intend trial strategy to be second-guessed in determining whether a person contributed to his conviction. (Lanza v State of New York, 130 AD2d 872 [a claimant’s choice not to testify at his criminal trial was a strategy decision and exercise of a constitutional right that did not contribute to his conviction].) Similarly, it has been held that failure of a defense lawyer to call a witness or seek an adjournment (Ivey v State of New York, 80 NY2d 474) or have a serological test performed in advance of trial (Coakley v State of New York, 150 Misc 2d 903, affd 225 AD2d 477) is not conduct chargeable to a claimant. In contrast, a decision by a claimant, rather than his attorney, not to call claimant’s wife as a witness in order to protect her from being incriminated rather than to advance his cause has been” found to be disqualifying conduct. (Williams v State of New York, 87 NY2d 857.) Other examples of conduct found to make a claimant ineligible to recover are: intentionally concealing the guilt of an identical twin brother (Stevenson v State of New York, 137 Misc 2d 313); offering a false alibi to the police (Moses v State of New York, 137 Misc 2d 1081); and giving an uncoerced confession of guilt, even though it is untrue and illegally obtained (Ausderau v State of New York, 130 Misc 2d 848, affd 127 AD2d 980, Iv denied 69 NY2d 613).
*686 The Law Revision Commission gave its opinion that a person seeking damages under this cause of action should not be rewarded where his own misconduct caused or brought about his prosecution. (See, Mem of Law Revision Commn, 1984 McKinney’s Session Laws of NY, at 2932.) Its proposed description of this element of the cause of action, which was adopted by the Legislature, left open to the judiciary the task of determining on a case-by-case basis what conduct would make a claimant ineligible to recover damages for unjust conviction and imprisonment. (See, Moses v State of New York, supra, at 1085 [the list of examples of disqualifying conduct is illustrative but not exhaustive].) Furthermore, the “clear and convincing” language of the statute indicates that the Legislature did not intend to provide monetary compensation for every mistake made in the course of a prosecution of an individual for a crime he did not commit and for which he was imprisoned. (Ausderau v State of New York, supra, at 851.)
The proof on this trial differed significantly from that summarized by the Appellate Division in its decision. Here the evidence establishes that claimant was stalling and avoiding his customers. Mrs. Mason testified credibly that he did not take or respond to telephone calls she made to his home. In August or September, he told her that he did not have the materials; that if he could secure four or five additional orders for pole barns, he could obtain materials at a reduced price. According to Horton, he talked to claimant a number of times in August, September and October. Claimant kept putting him off, and eventually Horton asked for return of his deposit. Claimant told him he did not have the deposit, but expected funds from another job and would repay him shortly. When the promised refund was not made, Horton asked for his materials to be delivered. Horton waited a week or two, and then visited claimant again. Horton told claimant that he would see a lawyer if he did not receive a refund or his materials. Claimant responded that Horton should go ahead, that he was going to Canada.[3] All of this no doubt led the Hortons and Masons to complain to the authorities and to claimant’s eventual indictment.
Claimant contends that he turned over either Horton’s or Mason’s deposit to a supplier and later received delivery of materials of equal value; he did not explain what happened to the other deposit. He produced no bank or supplier records to *687 support his contention that the missing deposit was properly applied. His contention that he eventually obtained materials for both the Horton and Mason home improvements is unsupported; in any event, he has not satisfactorily explained what happened to the materials he claimed to have obtained. Moreover, he has not proven that Horton’s and Mason’s deposits were not used for his personal expenses or other jobs.
Claimant’s explanation that his business records were destroyed or lost while he was in prison is weak and unpersuasive.[4] Moreover, claimant made no effort to produce his suppliers’ records, which might have established the deposit of funds and the ordering and delivery of materials. It seems very unlikely that he maintained regular books of account or other records called for by article 3-A of the Lien Law. Claimant argues that the Lien Law has no bearing on this case as an owner is not a beneficiary of a trust under section 71. There is no doubt that was the law at one time. However, amendments extending the benefits of article 3-A to owners and including special requirements for deposits on home improvement contracts were enacted in 1987.[5] (See, People v Hollowell, 168 AD2d 970.) The funds claimant received from Horton and Mason were deposits under contracts for improvements of residential properties.[6] These deposits constituted assets of separate trusts for the benefit of Horton and Mason and should have been maintained as such by him. {See, Lien Law §§ 70, 71 [2] [f].) The use of such funds was restricted to expenses directly related to the improvements for which Horton and Mason contracted. {See, Lien Law § 71 [2].) The deposits remained the property of claimant’s customers until paid and applied to their home improvements. {See, Lien Law § 71-a [4].)
Claimant never deposited his customers’ funds in a bank account, nor did he provide a bond or other security instrument for their protection. {See, Lien Law § 71-a [4].) He failed to produce books of account showing how the funds were handled and applied. {See, Lien Law § 75.) Using the funds of one customer for expenses of another’s improvement or for any *688 other nontrust purpose amounted to a breach of trust. (See, Lien Law § 72 [1].) As there is no credible evidence that claimant ever kept the books and records required by the Lien Law, it may be presumed that he applied Horton’s and Mason’s deposits for a nontrust purpose. (See, Lien Law § 75 [4].)
While it is apparent that claimant was innocent of the crimes charged in the indictment, the weight of the evidence here strongly supports an inference that his conduct after he collected the Horton and Mason deposits amounted to larceny under article 3-A. (See, People v Decker, 224 AD2d 860, Iv denied 88 NY2d 877; also, People v Brooks, 249 AD2d 572.) Had he complied with the Lien Law, his customers’ funds would have been intact or secured, and he would have been able to refund the deposits; or he could have produced records . showing that those funds had been used to buy materials for their jobs as he claims. In any event, it is unlikely that a prosecution would have ensued. It does not matter that claimant was not actually charged with larceny under the Lien Law. He has failed to establish that he did not by his conduct cause or bring about his conviction, and his claim must be dismissed.

. Penal Law § 155.05 (2) (d) sets a high standard of proof for larceny by false promise. The evidence must establish “that the facts and circumstances of the case are wholly consistent with guilty intent or belief and wholly inconsistent with innocent intent or belief, and excluding to a moral certainty every hypothesis except that of the defendant’s intention or belief that the promise would not be performed.”

. The examples listed are falsely giving an uncoerced confession of guilt, removing evidence, attempting to induce a witness to give false testimony, attempting to suppress testimony and concealing the guilt of another.

. Horton testified that he was not asked about this threat at the criminal trial.

. I am not unmindful that due consideration is to be given to difficulties of proof caused by passage of time and the destruction of evidence or other factors not caused by claimant or those acting on his behalf. (Court of Claims Act § 8-b [1].)

. See, L 1987, ch 421, eff Mar. 1, 1988.

. While the Horton and Mason contracts do not comply with the requirements of General Business Law § 771, that fact has no bearing on the result here.